THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:17-cr-00062-MR-WCM-4

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| JAMES JEREMIAH TONEY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion for Compassionate Release under 18 U.S.C. 3582(c)(1)(A)" [Doc. 124]. The Government opposes the Defendant's motion. [Doc. 129].

**I.    BACKGROUND**

In July 2017, the Defendant James Jeremiah Toney pled guilty to one count of possession of unauthorized access devices, and aiding and abetting the same, and one count of possession of a firearm after having been convicted of a felony, and aiding and abetting the same. In December 2017, the Court sentenced him to a total of 92 months' imprisonment. [Doc. 75]. The Defendant is currently housed at FCI Butner Medium II, and his

projected release date is June 29, 2022.[1]  The Defendant now seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the ongoing COVID-19 pandemic.  [Doc. 124].  Specifically, the Defendant argues that his underlying health conditions place him at a higher risk for severe illness from COVID-19, and that his particular vulnerability to the illness is an extraordinary and compelling reason for an immediate sentence reduction to time served.  [Id.].  Alternatively, the Defendant requests that the Court transfer him to home confinement for the remainder of his sentence.  [Id.].

## II.     DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."   18 U.S.C. §

---

[1] See https://www.bop.gov/inmateloc/ (last visited Oct. 2, 2020).

3582(c)(1)(A). Here, the Government concedes that the Defendant has exhausted the necessary administrative remedies. Accordingly, the Court will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under § 3582(c)(1)(A)(i) "extraordinary and compelling reasons" if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Sentencing Guidelines § 1B1.13 is the Sentencing Commission's policy statement applicable to compassionate release reductions.[2] See U.S.S.G. § 1B1.13. As is pertinent here, this policy statement provides that the Court may reduce a term of imprisonment after considering the § 3553(a)

---

[2] The policy statement refers only to motions filed by the BOP Director. That is because this policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not permitted to file motions under § 3582(c). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239. In light of the statutory requirement that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the Court concludes that this policy statement applies to motions filed by defendants under § 3582(c)(1)(A) as well. See United States v. Taylor, -- F. App'x --, 2020 WL 5412762 (4th Cir. Sept. 9, 2020) (reversing denial of defendant's compassionate release motion where district court failed to consider the policy statement set forth in § 1B1.3 and its comments).

3

factors if the Court finds that (1) "[e]xtraordinary and compelling reasons warrant the reduction;" (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The application note to § 1B1.13 specifies the types of circumstances that qualify as "extraordinary and compelling reasons." First, the defendant's medical condition can qualify as a basis for relief if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia," U.S.S.G. § 1B1.13, cmt. n.1(A)(i). The defendant's medical condition can also qualify as an extraordinary and compelling reason if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).

Here, the Defendant asserts that his underlying health conditions—namely, obesity, hypertension, an irregular heartbeat, sleep apnea, hepatitis C, lung hyperinflation, and his history of smoking—place him at an increased risk of serious complications or even death from contracting COVID-19. The Defendant's medical records, however, do not indicate that the Defendant has been diagnosed with obesity. As for the Defendant's history of smoking, it appears that the Defendant stopped smoking four years ago. [Doc. 131-1 at 85]. Thus, this is no longer a risk factor for the Defendant. As for the Defendant's hypertension, the medical records indicate that the Defendant's condition is not severe and that he has declined to take medication to control this condition. [Id. at 6]. Regarding the Defendant's diagnosis of hepatitis C, the medical records that the Defendant currently has no viral load and no active HCV infection. [Id. at 62]. As for the Defendant's other conditions, none of these conditions appear to have any correlation to an increased risk of serious complications or death from a COVID-19 infection.

Finally, the mere fact that the Defendant—like any other person incarcerated in BOP—faces a potential risk of contracting COVID-19 or suffering complications therefrom is not sufficient to justify his release. As the Court of Appeals for the Third Circuit recently noted, "the mere existence

5

Case 1:17-cr-00062-MR-WCM   Document 133   Filed 10/05/20   Page 5 of 10

of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).³ For all these reasons, the Court concludes that the Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(A)(1)(i).

Even if the Defendant could establish an extraordinary and compelling reason for his release, the Court would still deny the Defendant's motion because it appears that the Defendant would continue to pose a danger to public safety if released. Under the applicable policy statement, the Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

---

³ See generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp.

Here, the Defendant's crimes were serious. He was found in possession of 111 credit and gift cards and two devices capable of reading and re-encoding the cards' magnetic strips to change values and account numbers. Additionally, he was found in possession of three pistols, despite his prior felony convictions. Further, the Defendant has an extensive criminal history, placing him in criminal history category VI.

As for other the other relevant sentencing factors, the Defendant has not given the Court sufficient reason to alter its original analysis. The Defendant argues that the § 3553(a)(2)(C) analysis should be different now, because he has a "spotless" prison disciplinary record. [Doc. 124 at 7]. While the Defendant's conduct while incarcerated may be commendable, this fact standing alone does not justify a reconsideration of the § 3553(a) factors. Moreover, there is already a mechanism in place—good time credit—to account for a defendant's good behavior while incarcerated.

The Defendant also argues that the Court should resentence him "based on the sentence disparity between him and his co-defendants." [Doc. 124 at 6]. The Defendant, however, received a harsher sentence than his co-defendants did because of (1) his significant criminal history and (2) the fact that, in addition to possessing unauthorized access devices, he also

7

possessed firearms following a felony conviction. An examination of the Presentence Report makes clear that the calculation of the Defendant's offense level was largely driven by his criminal history and this firearm offense. [See Doc. 65: PSR]. As such, any alleged "disparity" between his sentence and the sentences of his co-defendants was entirely warranted.

Accordingly, in light of the Defendant's extensive criminal history and after due consideration of the relevant § 3553 factors, this Court finds that the need for the sentence to reflect the true extent and seriousness of the Defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from the Defendant's further crimes all militate against a reduced sentence in this case.

The Defendant alternatively moves the Court to order his release to home confinement due to the ongoing COVID-19 pandemic. [Doc. 124]. This request, however, must also be denied. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the

covered emergency period, if *the Attorney General* finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the *Director of the Bureau* may lengthen the maximum amount of time for which *the Director* is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, *as the Director determines appropriate.*") (emphasis added). As such, this Court lacks the authority to order the Defendant's release. Deffenbaugh v. Sullivan, No. 5:19-HC-2049-FL, 2019 WL 1779573, at *1 (E.D.N.C. Apr. 23, 2019); United States v. Overcash, No. 3:15-CR-263-FDW-1, 2019 WL 1472104, at *3 (W.D.N.C. Apr. 3, 2019) (noting that there is "no provision for judicial review of the BOP's and Attorney General's decision with regards to a request for home detention under § 60541(g)"); United States v. Curry, No. 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act gives the *Attorney General* the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant the requested relief.") (emphasis in original). For these reasons, the Defendant's request for a release to home confinement is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Compassionate Release under 18 U.S.C. 3582(c)(1)(A)" [Doc. 124] is **DENIED**.

**IT IS SO ORDERED.**

Signed: October 5, 2020

Martin Reidinger
Chief United States District Judge